IN THE MATTER OF THE ESTATE OF VICTORIA ROSA-LEZ MENDOZA, ALSO KNOWN AS VICTORIA BAEZ, DECEASED.

MARY CHAVEZ AND JOHN F. MENDOZA, PROPO-NENTS OF THE WILL OF VICTORIA ROSALEZ MEN-DOZA, ALSO KNOWN AS VICTORIA BAEZ, DECEASED, APPELLANTS, v. LUCY MENDOZA, ESTEFANA CHAVEZ, AMELIA SALDANA AND CARLOTA GALINDO, CONTESTANTS, RESPONDENTS.

No. 4292

October 12, 1960                              356 P.2d 13

*John P. Foley,* of Las Vegas, for Appellants.

*Robert E. Jones* and *Carl J. Christensen,* of Las Vegas, for Respondents.

## OPINION

By the Court, BADT, J.:

The court below denied probate of the will of Victoria Rosalez Mendoza, and the proponents of the will have appealed. Mary Chavez, one of the proponents, is a surviving daughter, and John F. Mendoza, the other proponent, is the son of a deceased child. These two are the sole beneficiaries of the will and are named as executors. The four respondents, who successfully opposed the probate of the will, are surviving daughters of the testatrix.

The will was contested on the ground that it is not the last will and testament of the deceased, that it was not executed and attested as a will in compliance with the laws of the State of Nevada, and that undue influence was exercised upon the decedent. The court found "that decedent was totally illiterate and could not read or write in any language and that the only language which the decedent could speak was Spanish; that said will, typewritten in English, was prepared by William Hatton, an attorney at law, from information supplied to him principally by the proponent Mary Chavez"; that the will was not attested and witnessed as required by law; that the protestants are children of the deceased; that they were not provided for in the will but entirely omitted therefrom; and that it does not appear that such omission was intentional. The trial court's conclusions were that the purported will "was not attested, declared or published in the manner prescribed by law and is not entitled to probate," and that the omission of the disinherited children was not intentional. It adjudged that the will be denied probate.

Appellants specify as error the holding of the court that the will was not attested, declared or published in the manner prescribed by law; that the holding that the will was not entitled to probate is not supported by any substantial evidence; that in holding that respondents were pretermitted heirs the court applied the wrong statute; that the holding that the omission of the testatrix to provide for respondents was not intentional is not supported by substantial evidence.

A large part of appellants' briefs and oral argument is devoted to the contention that, contrary to the court's finding, the will was properly executed and attested. Another considerable portion of appellants' briefs and oral argument devotes itself to the court's asserted error in applying to the issue of whether appellants were pretermitted heirs the statute in effect at the time of the execution of the will and at the time of the death of the testatrix, instead of the statute existing at the time of the contest. We find it unnecessary to discuss these assignments, as we have concluded that irrespective of these assignments there was substantial evidence to support the court's finding and conclusion that the will was not entitled to probate because of the lack of understanding and knowledge of its contents by the testatrix.

The learned trial judge, both in his decision on the submission of the contest and on his denial of motion for new trial, referred at length to the evidence adduced. On the occasion in which the will was signed and witnessed there were present Mrs. Mendoza (the testatrix), Mr. Hatton (her attorney), and Mary Chavez, her daughter (one of the proponents of the will and one of the two beneficiaries named therein). The two women who signed as attesting witnesses were present at the time of the attestation. Mary Chavez testified concerning Mr. Hatton's conversation with the testatrix in Spanish: "He always tried to talk to her kind of broken like, kind of in a Spanish, a few words he would say to her. Q. Was the conversation between your mother and Mr. Hatton in Spanish? A. No. He kind of talked

kind of broken like, a few words in Spanish. * * * Q. Did he have any conversation with her in Spanish? A. No, not exactly. I told him what she wanted. Q. You told Mr. Hatton what your mother wanted in her will? A. (Witness nods affirmatively.) * * * Q. So the conversations between you and Mr. Hatton were all in English? A. Yes." As to the conversations between Mr. Hatton and the testatrix—Mary Chavez described them: "* * * He just says a few words in Spanish." The court in characterizing the situation said: "Mary Chavez was, no doubt, the only person in the room at the time of the drafting of the will and the execution of the will who knew all of the facets in connection with her mother's thinking, and the translation of that thinking to the printed document representing the last will and testament of her mother." Mrs. Mendoza was unable to speak or read English and she was unable to read or write Spanish. Her signature to the will was by making her mark.

Much of the language used by the court in connection with his conclusion that the contestants were pretermitted heirs applied with like force to his conclusion that Mrs. Mendoza did not know the contents of the will she was signing, and that the will as drawn did not reflect how she wanted to dispose of her estate. The will was in the following language:

"I, VICTORIA ROSALEZ MENDOZA, being of sound mind and memory and not acting under any duress, thought or undue influence, make this Last Will and Testament.

"I am at this date married to Pedro C. Mendoza. I leave him one dollar ($1.00) if he is still my husband at the date of my death. If we are divorced before I did then I leave him nothing.

"All of the rest of my property, real and personal, of whatsoever nature and wheresoever located, I leave to Mary Chavez and John F. Mendoza, my children, equally, share and share alike.

"I hereby appoint Mary Chavez to be Executrix of this my Last Will and Testament with full power to sell, lease, mortgage, convey or dispose of all or any part of my estate, to give effect to this my Last Will and Testament.

"Hereunto I have set my hand and seal this 7th day of November, 1946, at Las Vegas, Nevada.

"Victoria Rosalez Mendoza
" (Her)     x     (Seal) "

This was followed by the signatures and the usual attestation clause of the witnesses.

The court stated in its decision denying new trial:

"Counsel for the Contestants point out that the proposition was carefully noted in the Will on the method used to disinherit Pedro Mendoza, and argue that, by the same token, the Testator should have disinherited the Contestants. The argument has great weight, but the only testimony on that point came from Mr. Hatton, himself, who prepared the Will. Mr. Hatton testified substantially as follows: That there were conversations regarding her husband and all her children. Mr. Hatton told her she should do the same thing with her children as she did with Pedro. The response was that the Testator did not want to mention the other children, as she would want them to respect her Will. Now, in contrast to this testimony, Mary Chavez testified in substance that her mother always 'took one of us' (children) with her. She was bashful; she could speak some English; that she did not specifically recall Mr. Hatton discussing the Will with her mother. It would seem that the making of such an important document under the existing circumstances and especially in view of Mary's testimony that Hatton spoke very little Spanish that she would have remembered any discussion that Mr. Hatton said he had with the Testator regarding her children. At very best, taking the testimony as a whole, Mrs. Mendoza was very close to her family, and all of the children testified without objection that their mother had discussed her properties with them and at no time ever indicated that any of them were not to share in her estate. One of the daughters, Lucille [Lucy], was a backward child. Her mother always showed great concern for her to such an extent that from the testimony of Mary Chavez and John Mendoza it would seem that they had an understanding with their mother that there may have been some trust decided upon for the benefit of Lucy. Mr. John Mendoza in his testimony twice

referred to it, that his aunt Lucy was to be taken care of 'by Mary and me'."

Mr. John Mendoza's testimony "that his aunt Lucy was to be taken care of 'by Mary and me'" was of particular significance to the trial court. It indicated a desire to provide something in the nature of a trust to take care of this retarded child. Yet the will made no provision nor any reference of any kind to indicate this desire of the testatrix. The court was also impressed by the fact that the disinherited children occupied a much stronger and more significant relationship than characterized by the timeworn phrase as being "the natural objects of her bounty." They were in many ways just as close to her as the child and grandchild named as the sole beneficiaries, and even the proponents of the will recognized her concern for the retarded child.

The record contains much testimony concerning the relations existing between the testatrix and all her children, a close-knit group, all helping the mother in various ways, attending her both at the hospital and in her home participating in conferences concerning Lucy, the latter's two children, and the question of her marriage, the matter of placing a mortgage for an improvement loan on part of the property, conversations among them all after the funeral concerning setting up a trust for Lucy, and many other details.

With reference to Mr. Hatton's testimony that he read the will to the testatrix in English and explained it "paragraph by paragraph, sentence by sentence, in Spanish, and one little piece after another," we may note that no correction was made in the sentence, "If we are divorced before I *did* then I leave him nothing." The word obviously intended was "die" or "died." Nor was a correction made in the devise of all the testatrix's property "to Mary Chavez and John F. Mendoza, *my children* * * *." Mary was her child but John was her grandchild. No correction was made in the introductory statement that the testatrix was "not acting under any duress, *thought* or undue influence * * *."

The question is not to what extent the reported testimony may influence this court. It is rather as to the extent to which the trial court was entitled to rely

upon it. Mr. Hatton was advised by Mary Chavez of the desires of the testatrix. This grew out of the conversations between Mary Chavez and Mr. Hatton, had in English, which Mrs. Mendoza could not understand. The court heard Mr. Hatton's testimony of his explaining to Mrs. Mendoza in Spanish what the will as drawn by him provided. Yet he spoke very little Spanish—only a few words. This was Mary Chavez's conclusion despite Mr. Hatton's statement that he spoke Spanish. The trial court was entitled to question his testimony that he first explained to Mrs. Mendoza that if she wanted to disinherit the four children not mentioned in the will, she should actually say so in like manner as she did in disinheriting her husband. Mary Chavez did not corroborate this.

It needs no citation of authority to support the universally recognized rule that it is essential to the validity of a will that the testator know and understand the contents thereof. As seen from the recitals of the learned trial judge in his written decision denying probate and in his written decision denying the motion for new trial, and as further seen from our references to the record, there was substantial evidence to support his conclusion: "Now, from the testimony the court does not believe that Mrs. Mendoza at the time of the making of her will had a full and complete understanding of it"; and the court's further statement: "The court concludes that from the testimony taken * * * the overwhelming evidence to the court is that Mrs. Mendoza did not know the exact contents of her will. * * *"

Affirmed.

McNAMEE, C. J., and PIKE, J., concur.