ALICE M. DUCHESNEAU *vs.* ADOLPH JASKOVIAK & others.

Worcester. November 4, 1971. — January 4, 1972.

Present: TAURO, C.J., CUTTER, REARDON, BRAUCHER, & HENNESSEY, JJ.

*Unsound Mind. Will,* Validity. *Evidence,* Judicial discretion; Opinion: expert.

Findings that a man eighty years old when he signed an instrument alleged to be his will at a hospital during his last illness lacked testamentary capacity and did not know the contents of the instrument nor intend it to be his will when he signed it would not have been plainly wrong on testimony of a doctor, supported by hospital records, that his condition was "senility, with confusion," and on evidence of the circumstances in which the instrument was prepared by others than the purported testator and was signed by him. |732–734|

It is within the sound discretion of a trial judge to admit material evidence offered by a party after he has rested. |734|

A doctor who had treated a purported testator for several years prior to his death, including the period of his last illness, was competent to give an opinion material to the issue of his testamentary capacity. |734|

PETITION filed in the Probate Court for the county of Worcester on November 1, 1967.

The case was heard by *Rice,* J.

*Arnold W. Olsson* for the petitioner.

*Edward D. Simsarian (Arthur L. Beaudette* with him) for the respondents.

HENNESSEY, J. The petitioner appeals from a decree entered in the Probate Court dismissing her petition to revoke the allowance of a will. The sole ground upon which she bases her petition was the existence of a subsequently discovered will. The issues raised by this appeal concern the testamentary intent of the testator, his testamentary capacity to execute the subsequent instrument, and the judge's rulings as to the admission of certain evidence. A transcript of the evidence is before us.

The testator, Leonard Edwards, was unmarried and had lived on a farm in Southbridge for thirty years with one Jessica Williams. Miss Williams owned the farm and the testator worked for her. On July 4, 1966, the testator was admitted to the Harrington Memorial Hospital "with acute cardial and renal insufficiency, weak, dyspneic and confused." He died at the hospital on August 26, 1966. He was eighty years old. A will dated December 3, 1964, was allowed by the court on October 4, 1966. Exactly one year later, on October 4, 1967, the petitioner, the testator's niece, filed an instrument dated July 19, 1966, which purports to be a subsequent will executed by the testator.

The subsequent instrument recites, in part, that "I . . . [the testator] being of sound mind and memory, do hereby devise or bequeath my metal safety box . . . to my niece . . . [the petitioner] to hold for safe keeping in her abode . . . until my return . . . [to the farm] or in case of my decease . . . I hereby bequeath to my said niece . . . said safety box and any and all of the contents therein to be her property . . . ." The testator signed the instrument by inscribing an X on the paper. It was witnessed by three members of the hospital staff. There was evidence that the testator owned a metal box and that it contained most of his valuables including a number of stock certificates. The box was kept at Miss Williams's farm. The petitioner testified that the later instrument was executed so that she could take the metal box from Miss Williams's possession and that she did show the instrument to Miss Williams as

evidence of the fact that she had a right to take the box. Miss Williams gave the metal box to the petitioner.

There was further evidence that the paper was first written in ink by Miss Williams in her own handwriting at the farm in the petitioner's presence and that the petitioner's daughter typed it and brought the typed paper back to Miss Williams to make sure it was all right. The handwritten copy is no longer in existence, it having been burned or thrown away. After the paper was shown to Miss Williams, the petitioner took it to the hospital where it was executed. The petitioner testified that no one did any talking at the hospital before the testator signed the paper and that she did not ask the testator if he knew what the paper was. There was conflicting evidence as to whether the contents of the paper were ever read to the testator. At the time that the testator's original will was offered for probate, the petitioner did not tell her attorney about the existence of the second instrument because, as she testified, the testator did not want Miss Williams to know what he had done. The second instrument was finally produced shortly after Miss Williams's death.

1. Since the petitioner did not exercise her privilege of requesting a report of material facts under G. L. c. 215, § 11, and no voluntary findings of fact were made, the decision of the judge must be affirmed if it can be supported on any legal principle and was not, in our view of the evidence, plainly wrong. *Ronan* v. *Moroney*, 313 Mass. 475, 478. *Goddard* v. *Dupree*, 322 Mass. 247, 250. The petitioner argues that the decree was not warranted in view of the evidence presented. We disagree.

The proponent of a will has the burden of proof on the issue of the soundness of mind of the testator. *Tarricone* v. *Cummings*, 340 Mass. 758, 761. In sustaining that burden he is aided by a presumption that the testator had the requisite testamentary capacity. *Santry* v. *France*, 327 Mass. 174. However, the presumption has effect only until evidence of want of capacity appears. *Epstein* v. *Boston Housing Authy.* 317 Mass. 297, 302. In the present case,

a physician, Dr. Nasse, who had treated the testator during his last illness and for several years prior thereto, testified. His opinions were received in evidence over the objections and exceptions of the petitioner. As discussed elsewhere in this opinion, the testimony was rightly admitted. Dr. Nasse's testimony alone, including his statement that the deceased was characterized by "senility, with confusion," warranted the judge in concluding that the testator lacked the requisite testamentary capacity. In addition, there was other evidence, including the hospital records of the testator's last illness, to support this conclusion. The issue was clearly one of fact. *Claffey* v. *Fenelon*, 263 Mass. 427, 431.

It is also well settled that in addition to possessing the requisite testamentary capacity and complying with the statutory formalities regarding execution, it must also be shown that the testator knew the contents of the instrument which he signed and executed it with the intention that it operate as his will. *Swett* v. *Boardman*, 1 Mass. 258, 262. *Dobija* v. *Hopey*, 353 Mass. 600, 603. The burden of proof on these matters is on the proponent. Here again, he is aided by a presumption that a person signing a written instrument knows its contents. *Richardson* v. *Richards*, 226 Mass. 240, 245. In the present case, however, there was evidence which would have warranted the judge in finding that the testator did not know the contents of the instrument and did not execute it with the requisite testamentary intent. The petitioner testified on several occasions that the instrument was written and executed in order that she could take possession of the metal box from Miss Williams because, as she stated, the testator wanted her "to take that box home." There was other evidence which indicated that the entire instrument was written by Miss Williams and typed by the petitioner's daughter. From this evidence, it was clear that the testator had no part in drafting the instrument. Further, there was evidence to indicate that no one did any talking at the hospital before the testator signed the instrument. Finally, although the petitioner testified that one of the witnesses read the

Duchesneau *v.* Jaskoviak.

instrument to the testator, the particular witness denied ever having done so. On this evidence, and bearing in mind that the judge was in the best position to assess the credibility of the witnesses, we cannot now say that a finding by the judge that the testator did not know the contents of the instrument and did not intend it as his will would have been plainly wrong.

2. The petitioner excepted to the admission in evidence of Dr. Nasse's opinions. She argues that both parties had rested with the exception of the doctor's testimony, and that the doctor's testimony was to be limited to clarifying an apparent alteration of a date on the hospital record. We disagree. The record does not support the petitioner's contention that the judge had ruled that the doctor's testimony was to be limited in any special way. Also, it is within the sound discretion of the judge to admit material evidence offered by a party after he has rested. *Commonwealth* v. *Wood*, 302 Mass. 265, 267–268. No abuse of discretion is shown here. The doctor had treated the testator for several years prior to his death including the period of the testator's last illness and was competent to give opinions material to the issue of the testamentary capacity of the testator. *Old Colony Trust Co.* v. *Di Cola*, 233 Mass. 119, 124. *Hind* v. *DeLong*, 325 Mass. 275, 277.

*Decree affirmed.*