903 P.2d 590

In the Matter of the ESTATE OF Grace Cooley GILLESPIE, aka Grace C. Gillespie, aka Grace Gillespie, deceased.

James Alpine GILLESPIE, Personal Representative, Appellee,

v.

Sidney J. GILLESPIE, Appellant.

No. CV–94–0285–PR.

Supreme Court of Arizona,
En Banc.

Sept. 14, 1995.

Lewis & Roca by Thomas E. Klinkel, Christine Hartland, Patricia K. Norris, Phoenix, for the Estate of Grace Cooley Gillespie and James Alpine Gillespie.

Gregory E. Hinkel, H. Eldon Hanson, Phoenix, for Sidney J. Gillespie.

MARTONE, Justice.

This case requires us to address the troubling question of whether a Will [1] expresses the will of a person who signs it under very stressful circumstances at that moment in time when life and death intersect.

## I. THE FACTS

The material facts are not in dispute. In 1979, Grace Gillespie, now deceased, executed a Will which gave three-fourths of her estate in equal shares to each of her three children, James Gillespie, Bernadette Gillespie Wolfswinkel, and Sidney Gillespie. Grace left the remaining one-fourth of her estate in trust for her mother. If her mother predeceased her, her share would pass to the children of Grace's brothers. Grace appointed her brother, Everett, to be the trustee for her mother's portion and designated her daughter, Bernadette, to be the alternate trustee. James was not named as a trustee.

---

1. We shall use a capital "W" when referring to the written instrument, and we shall use a small "w" when referring to the testator's wishes.

Grace named her lawyer, H. Eldon Hanson, as her personal representative, and if he could not serve, then he could nominate a replacement, absent which she named her brother, and if he could not serve, her daughter, Bernadette. James was not named personal representative.

On March 11, 1992, Grace was admitted to the hospital with pneumonia and lung cancer. Surgery on March 16, 1992, confirmed that it was terminal. The next day she was still on a ventilator and drowsy. The following day, March 18, 1992, there was no expectation that she would be extubated soon. She was expectorating thick yellow spit and was sedated for pain control. That night, James and Bernadette visited Grace and brought with them legal documents drafted at James's request by his lawyers. James placed one of the documents in front of Grace, told her that it was her Will, and that under it all of her estate would be equally divided among her three children, Bernadette, James and Sidney. Bernadette asked if that was what Grace wanted. Grace, while intubated, nodded affirmatively. Grace signed the Will. The signature page of that Will is attached as Appendix A to this opinion. The signature page of her 1979 Will is attached as Appendix B to this opinion. The contrast between the two signatures in strength and clarity speaks for itself. James then asked his mother to sign a document "okaying" everything that he had done on her behalf as her attorney-in-fact. He did not tell her what he had done. Grace signed that document.

Acting under a general power of attorney dated August 14, 1991, James changed Grace's estate plan without consulting Grace to see whether it conformed to her wishes. He asked his lawyers to prepare the 1992 Will and a trust agreement. The 1992 Will appointed James as personal representative and conveyed the bulk of the estate to James as trustee under a trust document he created. Grace did not ask him to do any of this. The lawyers who drafted these documents prepared them for James, and not for Grace. They represented James and billed him for their services. Indeed, they never communicated with Grace. The trust document, signed only by James on March 18, 1992, the same date he presented the 1992 Will to his mother, provided that upon Grace's death, one-third of the estate would go outright to James, one-third would go outright to Sidney, and one-third would pass in trust to Bernadette. On that same day, James changed Grace's beneficiary designation for her $2,000,000 plus lottery winnings from three equal shares outright to each of the children to James as trustee.

Grace died six days later. On the day of her death, James amended the trust document to provide that Sidney's share would be held in trust, and not be granted to him outright.

Grace had not asked for a new Will. Although James and Bernadette said they were unaware of the 1979 Will, neither they nor anyone else asked her if she had a Will. Except for the three-equal-share representation made to her at her deathbed, no one ever discussed her wishes with her. The 1992 Will and the accompanying trust document were not read to her. Even if they had been, they were written in complex legalese and were not likely to be understood by a lay person. The general power of attorney under which all of this was purportedly done was of the drugstore variety which authorized James to sign "bottomries" and "charter parties," but makes no mention of Grace's Will or estate plan.

Neither James nor anyone else told Grace about the trust document or about the change in the lottery beneficiary when he presented a document to her, while she was intubated on death's doorstep, purporting to ratify his acts. As to this "ratification," one of the attesting witnesses said:

> There was another piece of paper that Jimmy had said—I didn't—I didn't know what the name of it is. He had a paper, and he said, "Mom, this is so I can continue to pay your bills and to feed Emily." Emily was her bird. She had a cockatiel.

Deposition of Fred Rustin, May 29, 1992, at 54. Attached as Appendix C to this opinion is the ratification document showing that she could not even keep her signature on the line.

There is nothing in the record that would suggest that Grace would want her son James to have control over the distribution of her estate assets to her adopted son, Sidney. The 1992 Will contains some specific bequests, none of which were made known to Grace. It gave her Lexus automobile to Bernadette and forgave two-thirds of the outstanding debt owed to her by Gillespie Properties (James's corporation).

H. Eldon Hanson filed a petition for his appointment as personal representative and for the formal probate of the 1979 Will. James filed an objection, asked that he be appointed personal representative, and asked that the 1992 Will be admitted to probate. After Sidney appeared as an interested party, he and James filed cross-motions for summary judgment on the undisputed facts. James argued that there was no evidence of lack of testamentary capacity or undue influence. Sidney argued that, wholly apart from the issues of testamentary capacity and undue influence, a testator must know and understand the contents of a document before that document can be said to be that person's Will.

Viewing the case as one involving testamentary capacity and undue influence, the trial court granted James's motion for summary judgment and denied Sidney's. The trial court did not address Sidney's argument that the 1992 Will was not the will of his mother.

The court of appeals affirmed. While acknowledging that Sidney was correct that a testator must have knowledge of the contents of a Will for it to be valid, it did not see the trust arrangement as inconsistent with Grace's understanding that the three children were to take equally. We granted review to decide whether on these facts the 1992 Will is in fact the will of the testator.

## II. THE LAW AND ITS APPLICATION

■ A challenge to a Will as the will of the testator can be based on separate and independent grounds. Lack of testamentary capacity, undue influence, lack of knowledge, and fraud are among them. Each one of these can independently and sufficiently support a finding of invalidity. Thus, although a testator may well have testamentary capacity, that same person may not have knowledge of the contents of a Will. Testamentary incapacity can be a sufficient condition to invalidate a Will, but it is not a necessary one. *See, e.g., Newhall's Estate,* 190 Cal. 709, 214 P. 231, 235 (1923). We believe the evidence in this case of lack of knowledge is so overwhelming that it is unnecessary to base our decision on any other ground.[2]

■ "Where the testator lacks knowledge as to the entire contents of the will or is misled as to the nature of the instrument as a whole," then it "is undoubtedly correct" that "the instrument is inoperative." 1 W. Bowe & D. Parker, *Page on the Law of Wills* § 5.8, at 176–77 (1960). For example, in *Duchesneau v. Jaskoviak,* 360 Mass. 730, 277 N.E.2d 507 (1972), the court noted that in addition to testamentary capacity, "it must also be shown that the testator knew the contents of the instrument which he signed." *Id.,* 277 N.E.2d at 510. The evidence supported a finding in that case that a hospital patient did not know the contents of an instrument he was asked to sign. He "had no part in drafting the instrument," and "no one did any talking at the hospital before the testator signed the instrument." *Id.*

The cases uniformly support the proposition that unless the document that purports to be a Will is in fact the will of the testator, it is invalid. *Pepe v. Caputo,* 408 Ill. 321, 97 N.E.2d 260, 262 (1951) ("Where a will is prepared for a testator, and he is not given an opportunity to read it, or if he is unable to read and its contents have not been explained to him, such an instrument cannot be said to be his will, and will not, on contest, be sustained as a will."); *Estate of Smelser,* 16 Kan.App.2d 112, 818 P.2d 822, 826 (1991) (It is required "that the testator have knowledge of the will's contents at the time of its execution for the will to be valid"); *Estate of Mendoza,* 76 Nev. 396, 356 P.2d 13, 16 (1960)

---

**2.** We do, however, reject James's argument that A.R.S. § 14-3406(B) saves this Will. That statute addresses the *formal* requirements of execution, not the *substantive* validity of a Will that meets those formal requirements.

("It needs no citation of authority to support the universally recognized rule that it is essential to the validity of a will that the testator know and understand the contents thereof."); *Estate of Cohen*, 445 Pa. 549, 284 A.2d 754, 756 (1971) ("[I]f a decedent had no knowledge of the contents of a document purporting to be his will, it cannot be said that such a document is a declaration of that decedent's intentions.").

■ The 1992 Will was the will of James, not Grace. Grace did not ask anyone to draw up a new Will for her. She already had a Will and a lawyer. James took it upon himself to substitute his judgment for hers. He asked his lawyer to draft a Will and a trust agreement that expressed his will. He then presented one of them to his mother on her deathbed and failed to disclose its contents to her. She was intubated and could not speak. She was in no position to read the Will. Neither he nor Bernadette told their mother that the document they presented her varied in material respects from her Will. It changed the personal representative, the distribution, and made specific bequests. It subjected Bernadette's and Sidney's shares to the discretion, power, and control of James through a trust arrangement. James did not tell her that he had changed her lottery beneficiary designation so that instead of passing outright to her children it would be subject to his control under a trust. Without full disclosure, the representation that each of her children would take equally was misleading. When James asked his mother to ratify his acts as attorney-in-fact, he did so under the representation that it would allow him to continue to pay her bills and feed her bird. He did not tell her that the document purported to ratify the substitution of his estate plan for hers.

On these undisputed facts we conclude as a matter of law that the 1992 Will is invalid because Grace lacked any understanding of its contents and indeed was misled as to its true nature. The trial court thus erred in granting James's motion for summary judgment and should have granted Sidney's. We reverse the judgment in favor of James, vacate the memorandum decision of the court of appeals, and remand this case to the trial court for entry of judgment in favor of Sidney on his motion for summary judgment, denial of probate of the 1992 Will, and for further proceedings on the admission of the 1979 Will to probate.

FELDMAN, C.J., MOELLER, V.C.J., and CORCORAN and ZLAKET, JJ., concur.

286

IN WITNESS WHEREOF, I, GRACE COOLEY GILLESPIE, the Testatrix, sign my name to this instrument this 18ᵗʰ day of March, 1992, and being first duly sworn, do hereby declare to the undersigned authority that I sign and execute this instrument as my Last Will and that I sign it willingly, and that I execute it as my free and voluntary act for the purposes therein expressed, and that I am eighteen years of age or older, of sound mind, and under no constraint or undue influence.

_____
GRACE COOLEY GILLESPIE, Testatrix

We, _Emily N. Liyuad_ and _Fred Rusten_, the witnesses, sign our names to this instrument, being first duly sworn, and do hereby declare to the undersigned authority that in our presence the Testatrix signs and executes this instrument as her Last Will and that she signs it willingly, and that each of us, in the presence and hearing of the Testatrix, hereby signs this Will as witness to the Testatrix's signing, and that to the best of our knowledge the Testatrix is eighteen years of age or older, of sound mind, and under no constraint or undue influence.

_____
Witness

_____
Witness

STATE OF ARIZONA          )
                         ) ss.
County of Maricopa        )

Subscribed, sworn to and acknowledged before me by GRACE COOLEY GILLESPIE, the Testatrix, and subscribed and sworn to before me by _Emily N. Liyuad_ and

WILL - Page 18                                    AXX0494D

"A"

## APPENDIX B

as the said H. ELDON HANSON shall nominate to act in his stead be appointed as my Personal Representative hereunder; and if for any reason such alternative appointment cannot be accomplished, I then alternatively further appoint my brother, EVERETT CASTLE, as my next Alternate Personal Representative hereunder; and if for any reason he cannot act in such capacity, then I nominate my daughter, BERNADETTE ANN GILLESPIE WOLFSWINKEL, as my next Alternate Personal Representative hereunder. I direct that any person by me hereinabove named to be, to act and to serve as my Personal Representative, do so without the necessity of bond or other security for the faithful performance of his or her duties in any jurisdiction.

**EIGHTH:** I direct that my attorney, H. ELDON HANSON, 122 West Osborn Road, Phoenix, Arizona 85013, has at my direction, and with my express approval, drafted this, my Last Will and Testament.

IN WITNESS WHEREOF, I have hereunto set my hand and declared this to be my Last Will and Testament, on this, the 12th day of JUNE, 1979.

GRACE COOLEY GILLESPIE, Testatrix

I, GRACE COOLEY GILLESPIE, the Testatrix, have signed by name to this instrument, on this 12th day of JUNE, 1979, being first duly sworn, do hereby declare to the undersigned

Testatrix

"B"

288

APPENDIX C

LEWIS
AND
ROCA
LAWYERS

AFFIDAVIT OF RATIFICATION OF ACTS DONE BY ATTORNEY-IN-FACT

STATE OF ARIZONA )
) ss.
County of Maricopa )

GRACE COOLEY GILLESPIE, being duly sworn, states as follows:

1. GRACE COOLEY GILLESPIE executed a durable General Power of Attorney on August 14, 1991 (the "Power of Attorney"), appointing JAMES ALPINE GILLESPIE as her Attorney-In-Fact.

2. On March 18, 1992, JAMES ALPINE GILLESPIE, in his capacity as Attorney-In-Fact for GRACE COOLEY GILLESPIE under the Power of Attorney, executed The Grace Cooley Gillespie Family Trust Dated March 18, 1992 (the "Trust"), on behalf of GRACE COOLEY GILLESPIE, as Settlor.

3. On March 18, 1992, JAMES ALPINE GILLESPIE, in his capacity as Attorney-In-Fact for GRACE COOLEY GILLESPIE under the Power of Attorney, executed a Change of Address/Beneficiary form (the "Form") with respect to GRACE COOLEY GILLESPIE's Arizona lottery annuity with Canada Life.

4. GRACE COOLEY GILLESPIE hereby ratifies and affirms the acts of her Attorney-In-Fact, JAMES ALPINE GILLESPIE, in executing the Trust and the Form.

DATED this 18 day of March, 1992.

_GRACE COOLEY GILLESPIE, Affiant_

WITNESS STATEMENT

I declare that the Affiant is personally known to me, that she signed this document in my presence, and that she appears to be of sound mind and under no duress,

AXX041917

"C"