**In re ESTATE OF Ward TURPIN;
Rodman M. Turpin,
Appellant.**

**No. 10–PR–707.**

District of Columbia Court of Appeals.

Argued Feb. 8, 2011.

Decided May 19, 2011.

Michael L. Smith, for appellant.

John B. Dunn, Tacoma Park, MD, for appellee.

Before GLICKMAN and THOMPSON, Associate Judges, and FERREN, Senior Judge.

THOMPSON, Associate Judge:

Appellant Rodman Turpin ("Rodman") challenges the trial court's ruling, after a bench trial, that although a will executed by Ward Turpin ("Turpin") in 2007 was the result of fraud and undue influence, (1) the portion of the will naming Ajolique Jude ("Ajolique") as a residuary legatee should be given effect, and (2) the entire residuary estate passes to Ajolique under the will. We sustain the trial court's ruling insofar as it holds that one-half of the residuary estate passes to Ajolique under the will. However, for the reasons discussed below, we conclude that the other half of the residuary estate must pass by

intestacy. Accordingly, we affirm in part and reverse in part.

## I.

Appellant has not provided us with a trial transcript, and thus we do not have the full details of the evidence presented or the bench rulings made during the trial. However, in its May 17, 2010 written "Order," the trial court made detailed factual findings, which neither party has challenged. Accordingly, we rely on the Order for the following description of the relevant factual and procedural background.

In 1994, Turpin executed a will (the "1994 Will") that left the entirety of his estate to his niece Diane Jude ("Diane"), who, in 1992, moved into Turpin's home along with her husband Amani Jude ("Amani") and the couple's children, Ajolique and Aristide Jude ("Aristide").[1] Under the terms of the 1994 Will, in the event that Diane did not survive Turpin, equal shares of Turpin's estate were to be held in trust for the benefit of Ajolique and Aristide until after the thirty-fifth birthday of Ajolique, with Amani as trustee. As trustee, Amani was to have the power to "make full and final distribution" to Ajolique and Aristide before Ajolique reached the age of thirty-five "if in his discretion, it is for the best interest of the child or children."

Diane Jude died in 1995. On December 2, 2007, Turpin, who was eighty-two years old, was admitted to the hospital where, during his entire stay, he remained in a weakened and, at times, confused state. On December 4, 2007, Amani visited Turpin in the hospital and brought with him legal documents—including a new will— that he had downloaded from the internet. Accompanying Amani was Imani Ellis–Cheek, an attorney and friend of Amani. Amani placed the new will in front of Turpin and told him that it was an amendment, or codicil, to the 1994 Will, the purpose of which was to amend the distribution of Turpin's estate to disinherit Aristide, who had previously attempted to steal $5,000 from Turpin by forging a check. Turpin signed the new will (the "2007 Will") without reading it.[2] Ellis–Cheek, along with Turpin's hospital roommate, witnessed the Will in Turpin's presence.

The provisions of the 2007 Will "differ significantly" from those of the 1994 Will. The 2007 Will named Amani personal representative of Turpin's estate, gave the entire estate to Amani and Ajolique outright rather than in trust, and gave a contingent residuary beneficiary interest to Aristide. Specifically, section IV of the 2007 Will stated:

> I give, devise and bequeath all of the rest, residue and remainder of my estate, of whatever kind and character, and wherever located, to the daughter of my niece, Diane Jude, that being Ajolique Jude, and to her father, Amani E.P. Guy Z. Jude. Also, I have elected to remove the first child of Diane, that being Aristide Jude, from any inheritance as aforementioned in the original will. In the event of either of these two predeceasing him, Aristide Jude, then the remainder shall be left to Rochelle Walton, In Trust, for Aristide. The Trust shall continue until his thirty sixth birthday, whereby the Trustee has the power to make full distribution before

---

1. The home had been owned jointly by Turpin, his mother and his brother. At the time of his death, Turpin owned the house as the sole surviving joint tenant.

2. The court found that there was "no credible evidence in the record that [Turpin] read the documents."

age 36, if in her discretion, it is for the best interest of Aristide.

Amani admitted that he did not discuss with Turpin the provision that made Aristide a contingent beneficiary. Nor was that portion of the will read to Turpin.

Two months after signing the 2007 Will, Turpin died, survived by his two sons, appellant Rodman and his brother Rodney Turpin. On May 21, 2008, Rodman filed a petition in the Superior Court Probate Division for appointment as personal representative of Turpin's estate. He asserted that no will existed and he listed only his brother and himself as interested persons entitled to notice of the proceedings. On May 29, 2008, the court appointed Rodman personal representative. On June 17, 2008, unaware of Rodman's appointment as personal representative, Amani likewise filed for appointment as personal representative of Turpin's estate. Amani presented two documents for probate-the 1994 Will and the 2007 Will. On June 27, 2008, the court appointed Amani personal representative. On November 10, 2008, Rodman filed a verified complaint to contest the validity of the two wills Amani had presented. The court entered an order vacating the appointment of both men as personal representative, appointed a substitute personal representative, consolidated the competing proceedings, and thereafter conducted a bench trial.

At trial, Rodman challenged the validity of both the 1994 Will and the 2007 Will, claiming, as to the 2007 Will, that Amani had used fraud and undue influence to procure Turpin's signature on the will. Amani denied that the 2007 Will was a product of fraud or undue influence and contended that the 2007 Will was intended to be a codicil to the 1994 Will. In its May 17, 2010 Order, the trial court ruled that although Turpin "believed that he had a valid will" and although the 1994 Will was "consistent with ... Turpin's intentions," Amani had "failed to prove due execution" of the 1994 Will. Thus, the court deemed the 1994 Will to be invalid (a ruling that the parties do not dispute in this appeal). The court found that the 2007 Will "meets the requirements for being a stand alone will, rather than merely a codicil" to the 1994 Will and also found that Rodman had "failed to establish that [Turpin] was not competent to make a will." At the same time, the court found that Rodman "met his burden of proving by clear and convincing evidence" that the 2007 Will was procured by the "fraud and undue influence of Amani Jude." The court found that Amani, whom Turpin "did not like,"[3] "overbore Ward Turpin's true will, causing [Turpin] to sign a will that, in part, did not express his wishes." The court explained that "substantial evidence" showed that Amani had "overwhelm[ed] Turpin" with "numerous documents less than two days after Turpin was admitted" to the hospital; had convinced Turpin to make a will in December 2007 "by misrepresenting to him that Aristide ... would no longer inherit from him under a new will;" and had knowingly made "false representations that Aristide Jude had been removed from the will," "when, in fact, Aristide was a contingent residuary beneficiary."

The court acknowledged that it was aware of no District of Columbia case addressing the issue of whether a will may be declared partially (rather than wholly) invalid where it is the product of undue influence,[4] but noted that Maryland "has

---

3. The court found that Turpin had told others that he "did not want Amani Jude to have 'anything' of his."

4. The court cited *Roberts–Douglas v. Meares*, 624 A.2d 405, 419 (D.C.1992), as establishing, generally, that a will found to be the result of

long accepted and adhered to the doctrine of partial invalidity" as potentially applicable in such a circumstance. The court stated that it would apply the doctrine of partial invalidity to strike the portions of the 2007 Will that were procured by Amani's fraud and undue influence, finding that it could do so without "doing violence to [Turpin's] testamentary scheme." Accordingly, the court ordered stricken from the 2007 Will the language appointing Amani as personal representative and also removed the language designating Amani and Aristide as residuary legatee and contingent residuary legatee, respectively.[5] The court let stand the 2007 Will's residuary gift to Ajolique: "I give, devise and bequeath all of the rest, residue and remainder of my estate . . . to . . . Ajolique Jude." The court "question[ed]" and expressed "uncertainty about" whether "the omission from the 2007 will of a trust on the legacy to Ajolique Jude was a part of the undue influence exerted by Amani Jude," observing that "[t]here was no evidence at trial about how the trust came to be removed." However, finding that Ajolique "played no part in the undue influence exerted upon Ward Turpin by her father" and that there was "no doubt that one aspect of Turpin's testamentary scheme was for Ajolique . . . to be a beneficiary of his estate and a residuary beneficiary of the estate," the court ruled that all of the residuary estate passes to Ajolique, whom, the court found, Turpin loved and treated as a granddaughter. The court stated that it "c[ould not] find that Ward Turpin did not want his sons to receive any of his estate," but found that the fore-

going considerations "militate[d] in favor of allowing" the portion of the residuary estate that might otherwise have passed to the sons through intestacy to pass instead to Ajolique.

Rodman now appeals, contending that the trial court erred in ruling that the 2007 Will was valid despite having found that Turpin did not read the will and was not aware of all its contents, would not have executed the will if he had known that it named Aristide as a contingent beneficiary, and was unduly influenced and fraudulently induced into signing the will. Rodman also argues that the court erred in applying the doctrine of partial invalidity, erred in relying on the 1994 Will to determine Turpin's testamentary intent, and erred in ruling that all of the residuary estate passes to Ajolique.

## II.

■ On appeal from a case tried without a jury, we review both as to the facts and the law, but the judgment may not be set aside except for errors of law unless it appears that the judgment is "plainly wrong or without evidence to support it." *Ingersoll Trust*, 950 A.2d 672, 692 (D.C. 2008). Our review of legal issues is de novo. *Id.* (citing *Perkins v. United States*, 936 A.2d 303, 305 (D.C.2007)).

## III.

### A.

■ We begin our analysis with Rodman's claim that the court erred by not

---

undue influence will be deemed invalid in its entirety.

5. Specifically, the court ordered stricken "and to her father, Amani E.P. Guy Z. Jude" as well as the following language:

In the event of either of these two predeceasing him, Aristide Jude, then the remain-

der shall be left to Rochelle Walton, In Trust, for Aristide. The Trust shall continue until his thirty sixth birthday, whereby the Trustee has the power to make full distribution before age 36, if in her discretion, it is for the best interest of Aristide.

invalidating the 2007 Will in its entirety since Turpin "neither read nor did anyone read to him, the portions of the will which made Aristide Jude a beneficiary" and "was not aware that Aristide Jude was listed as a beneficiary in his will." [6] There is language in a number of probate cases that appears to support appellant's argument that the entire 2007 Will should be invalidated because Turpin did not know the will's entire contents. *See, e.g., Ingersoll Trust,* 950 A.2d at 697 n. 18 (citing *Estate of Herbert,* 90 Hawai'i 443, 979 P.2d 39, 51–52 (1999), for the proposition that "[a]lthough there is a strong presumption that an able-bodied testator or testatrix knew the contents of his or her will, a will may be denied probate if he or she was ignorant of its contents"); *Griffith v. Diffenderffer,* 50 Md. 466, 486 (Md.1879) ("Knowledge of its contents is, of course, essential to the validity of every will."); *Estate of Gillespie,* 183 Ariz. 282, 903 P.2d 590, 592 (1995) (en banc) ("Where the testator lacks knowledge as to the entire contents of the will or is misled as to the nature of the instrument as a whole," however, "then it is undoubtedly correct that the instrument is inoperative." (internal citations omitted) (citing 1 PAGE ON THE LAW OF WILLS § 5.8, at 176–77 (1960))); *see also Estate of Mendoza,* 76 Nev. 396, 356 P.2d 13, 16 (1960) ("It needs no citation of authority to support the universally recognized rule that it is essential to the validity of a will that the testator know and understand the contents thereof."). We are persuaded, however, by the following commentary, which urges that the correct reading of such cases is that a will may not be admitted to probate where a purported testator is entirely ignorant of the contents of his will, indicating a lack of testamentary intent:

It is sometimes said that testator must know the contents of the will at the time that he executes it in order for it to be given effect as a valid will, and that if he does not know its contents the instrument is inoperative. This statement is not altogether accurate for it conveys the impression that knowledge of the contents of the instrument constitutes by itself an inherent element of a will and has individual significance separate and apart from the requirement of testamentary intent. It would be more accurate to define the effect of the presence or absence of knowledge of the contents in terms of its evidentiary effect as one of the several factors bearing on the presence or absence of the required element of intent. The above statement is further objectionable in that it overlooks the effect which courts give to cases involving mistake as to a single provision, a single word, or some other part of the contents of a will. It sometimes happens that an instrument executed with testamentary intent is exactly as the testator intended it with the exception of one provision which the testator does not know is there and which he did not intend to have in the instrument. The mistaken inclusion of a gift which the testator did not intend to make is almost always the result of a lack of

---

**6.** Rodman argues in addition that the court erred in ruling that the 2007 Will was valid since the witnesses to the will (Ellis–Cheeks and Turpin's hospital roommate), who testified at trial, were not credible. However, in Probate Division trials, as in other evidentiary proceedings, "resolution of credibility issues is within the province of the trier of the facts." *Estate of Walker,* 890 A.2d 216, 224 (D.C.2006). Without a transcript enabling us to see and compare the testimony of the various witnesses, *a fortiori* we owe "enhanced deference" to a Probate Division decision that is "based on a meaningful assessment of the credibility of the principals on both sides, with each party having the opportunity to cross-examine her adversary." *Murphy v. McCloud,* 650 A.2d 202, 218 (D.C.1994).

knowledge on the part of the testator and yet the effect given the fact of lack of knowledge is not that effect indicated in the opening statement above. Such mistakes usually result from the fact that the testator either executes the instrument on the assumption that it was correctly drafted pursuant to his instructions or he reads it hurriedly and overlooks the mistakenly included gift. In these cases, which are treated by the courts as falling under the concepts of mistake, the effect of lack of knowledge of the contents is not to deny effect to the entire instrument but rather to strike out and deny probate to the specific provision which is in the will by mistake and without the testator's knowledge. Where the testator lacks knowledge as to the entire contents of the will or is misled as to the nature of the instrument as a whole, the opening statement of this section is undoubtedly correct. Even in this instance, however, it might be better to explain the result of total invalidity of the instrument in terms of mistake in execution going to the nature of the instrument, as distinguished from mistake merely going to the part of the contents, or in terms of knowledge being an essential ingredient of intent.

1 PAGE ON THE LAW OF WILLS, § 5.8, at 180–82 (2003). Here, the trial court was satisfied that Turpin had testamentary intent when he signed the 2007 Will (finding that "Turpin's purpose in making a will in 2007 was to remove Aristide Jude from inherit-

ing from him"). As recounted above, the court also found that Turpin was not aware of the inclusion of the sentence of the 2007 Will that made Aristide a contingent beneficiary. Applying the case law cited above, we agree with the trial court's ruling that the contingent bequest to Aristide may therefore be given no effect.[7] However, since the court found that the provision of the 2007 Will leaving the residuum of Turpin's estate to Ajolique and Amani was read to Turpin before he signed the will, we cannot agree with Rodman that this provision is void for lack of the testator's knowledge.

**B.**

The foregoing does not end our discussion; we must next consider Rodman's contention that once the court determined that the 2007 Will was the product of fraud and undue influence, the court should have invalidated the entire will.[8] Rodman does not appear to dispute that, in appropriate circumstances, a ruling that a will is partially valid may be warranted, but he contends that this result is not proper here. Rodman urges that the objective of partial invalidation is to preclude any benefit flowing to the wrongdoer, whereas here, the partial invalidation that the trial court ordered (striking the bequest and contingent bequest to Amani and Aristide, but allowing the legacy to Ajolique to stand) would enable Amani to benefit by "continu[ing] to reside in the home" (the chief asset of Turpin's estate).[9] Further, Rodman points out, to strike the entire provision leaving

---

7. The court struck the provision on the ground that it was the product of undue influence, but the case law on lack of knowledge of a will's contents supplies an alternative basis for upholding this portion of the court's ruling.

8. Rodman cites *Estate of Delaney*, 819 A.2d 968, 981 (D.C.2003) ("[T]he District of Columbia has a strong interest in ... ensuring

that a will admitted to probate is not the result of fraud.").

9. Partial invalidation, Rodman urges, would also accomplish what the wrongdoer Amani set out to accomplish: to protect one or both of his children while excluding Turpin's sons from taking anything.

the residuary estate to Ajolique and Amani would leave a document that is not complete and intelligible, with the result that the entire 2007 Will must fail.

We begin our analysis by considering whether to recognize the doctrine of partial invalidity of a will affected by fraud or undue influence, an issue of first impression in this jurisdiction. "Since the early or middle nineteenth century, the great majority of American jurisdictions have endorsed" the doctrine, which allows a court to invalidate portions of the will that are the result of undue influence or fraud and leave the other portions of the will if such other portions are separable from the invalid ones. Alan R. Gilbert, Annotation, *Partial invalidity of a will: may parts of will be upheld notwithstanding failure of other parts for lack of testamentary mental capacity or undue influence*, 64 A.L.R.3d 261 (1975). As summarized in 79 AM.JUR.2D *Wills* § 372 (2d ed. 2002), the doctrine is as follows:

> Where a part of a testamentary instrument is shown to have been the result of undue influence [or fraud], other portions of the will may still be given effect if they can be separated from the invalid parts leaving intact an intelligible instrument. Those portions of the will alleged to be the product of undue influence can be stricken and the remainder of the will allowed to stand if those portions of the will can be separated without defeating the testator's intent or destroying the testamentary scheme.

The doctrine provides an alternative to complete invalidation of a will, but will not be applied when it will "defeat the manifest intent of the testator, interfere with the general scheme of distribution, or work an injustice to other heirs." *Id.*

■ Several reasons persuade us to recognize the doctrine of partial invalidity. First, our longstanding preference is to give effect to a will, if permissible, so as to avoid intestacy, *see District of Columbia v. Estate of Parsons*, 590 A.2d 133, 138 (D.C. 1991), and to give the intent of the testator "full effect unless it is contrary to law." *Estate of Creech*, 989 A.2d 185, 190 (D.C. 2010). Second, our case law and District of Columbia statutory law both make provision for recognition of a portion of a testamentary instrument in a variety of other contexts.[10] Third, Maryland, to whose common law we look when there is no controlling District of Columbia law directly on point,[11] has long recognized and applied the doctrine of partial invalidity. *See McIntire v. Worthington*, 68 Md. 203, 12 A. 251, 252 (1887) (reasoning that "[i]t does not follow, because a particular devise or bequest is void, that all other devises or bequests are void; this depends upon whether the alleged undue influence affects the whole will," and citing English common-law cases for the proposition that "one part of a will may be invalid by reason of undue influence, and other parts unaffected by such influence may be valid"); *West v. Fidelity–Baltimore Nat'l Bank*, 219 Md. 258, 147 A.2d 859, 865 (1959) ("[F]raud in procuring a legacy

10. *See, e.g., Washington Loan & Trust Co. v. Hammond*, 278 F. 569, 571–73 (D.C.Cir.1922) (striking the second bequest listed in the fifth paragraph of a will but leaving the first bequest in that paragraph intact); *Wolfe v. Snyder*, 48 F.Supp. 227, 228–29 (D.D.C.1942) (recognizing that District of Columbia law (now codified at D.C.Code § 18–109 (2001)) establishing how a will or codicil, "or a part thereof," may be revoked, "authorize[s] revo-

cation of a portion ... of the will ... leaving the remainder of the will unaffected, if such remainder standing alone be an understandable testamentary expression of the testator").

11. *See Roberts–Douglas*, 624 A.2d at 419 n. 20 (stating that decisions of the Court of Appeals of Maryland are "accorded the most respectful consideration by our courts").

would not invalidate the will although it might the legacy[.]"). Accordingly, we now recognize that if a trial court finds that a will was affected by undue influence or fraud, the court may, as appropriate, declare it void in whole or in part.

■ Turning back to the facts of the present case: Citing Amani's "misdeeds" and false statements, the trial court struck the provision in the 2007 Will naming Amani as personal representative and the portion of the sentence that provides for a portion of "all of the rest, residue, and remainder" of Turpin's estate to Amani (leaving intact the portion of the sentence that named Ajolique as an outright beneficiary, rather than as the beneficiary of a trust, as in the 1994 Will). An argument can certainly be made that these strikes, though appropriate, did not completely excise the material affected by Amani's influence. The court's "strong view" was that "having Ajolique's legacy impressed with a trust is what Turpin intended." [12] Rather than a trust for the benefit of Ajolique, the 2007 Will devises and bequeaths Turpin's property to Ajolique and Amani *jointly,* a bequest that the court determined was "the result of Amani Jude's persuasion." The court found that Amani prevailed upon Turpin "at his weakest moments ... to make a disposition inconsistent with Turpin's feelings toward [Amani]—*naming him as a joint beneficiary of his estate*" (emphasis added). One could quite reasonably surmise that Amani removed the trust to Ajolique, the form of gift directed in the 1994 Will, to facilitate the outright ownership interest in Turpin's estate that Amani assigned to himself when he prepared the 2007 Will.[13] However, we are unwilling to hazard such a guess without having reviewed the testimony in the case, particularly since the bequest to Ajolique *sans* trust was read to Turpin. On the present record, we accept the trial court's determination that the record left "uncertain[ ]" "whether the omission of the trust provision resulted from [Amani's] undue

12. We pause to address Rodman's argument that the court should not have looked to extrinsic sources, of which the invalid 1994 Will is one, for any purpose other than to interpret ambiguities in the 2007 Will, of which there are none. Turpin is correct that we may not give effect to the provisions of the 1994 Will, a will that the court found to be invalid, or to other extrinsic evidence of Turpin's intent. *See Knupp v. District of Columbia,* 578 A.2d 702, 705–06 (D.C.1990) (explaining that "no matter how clearly a testator's wish to make a particular disposition may appear from sources outside the will, a court cannot give it effect unless the words written into the will effect that disposition or are reasonably susceptible to the interpretation that they do"). However, it was appropriate for the court to look to the 1994 Will as an aid to determining whether the 2007 Will was affected by undue influence. *See Griffith,* 50 Md. at 482 (explaining that a testator's "declarations in regard to her testamentary intentions ... before the execution of the will and codicil, and before any improper influences are supposed to have operated upon her, are admissible ... either to rebut the charges of fraud and undue influence, by showing that the will is consistent with the long cherished wishes of a testator, or [to show] that it is contrary to well settled convictions of what he thought was a just and proper disposition of his property"); *Estate of Gill,* 111 Cal.App.2d 486, 244 P.2d 724, 726 (1952) (holding that presumption that respondent exercised undue influence by preparing will that left all of the decedent's property to him was amply rebutted by evidence that decedent had made "an earlier will, ineffective because not witnessed, leaving all her property to him and had written him a letter stating that she was leaving all her property to him").

13. The 1994 Will did name Amani as trustee for the benefit of Ajolique (and Aristide) and gave Amani the discretion to distribute her portion of the estate to her outright if he judged it in her best interest; but the 1994 Will did not authorize Amani to transfer any portion of the estate to himself.

influence," [14] and thus we defer to the court's judgment that the bequest to Ajolique outright should not be disqualified by a possible, though not established, taint. Accordingly, we affirm the trial court's ruling that the provision of the 2007 Will leaving one-half of the residuary estate to Ajolique may stand.[15]

It does not follow, however, that Ajolique takes the other half of the residuary estate. As we have discussed, the 2007 Will named Amani as the other residuary beneficiary, but the legacy to Amani is void because of undue influence. The result that our precedent mandates in this circumstance is that the portion of the residuary estate that would have gone to Amani passes instead via intestacy. *See George Washington Univ. v. Riggs Nat'l Bank*, 88 F.2d 771, 772 (D.C.Cir.1936). In that case, the testator left his residuary estate in equal shares to four institutions, The New York Avenue Presbyterian Church, The George Washington University, The American University and Garfield Memorial Hospital. *Id.* at 771. It was determined that the bequest to the New York Avenue Presbyterian Church was invalid, and the issue before the court was "whether the testator died intestate as to the one-fourth of the residue bequeathed to the church, or whether the three remaining institutions named in the residuary clause shall take in equal shares the portion of the residue bequeathed to the New York Avenue Presbyterian Church." *Id.* at 772. The court rejected the argument that the residuary estate should be divided equally among the three remaining residuary legatees. The court explained that residuary legatees are tenants in com-

---

14. As noted above, the trial court found that the 2007 Will *"in part,* did not express [Turpin's] wishes" (emphasis added).

15. The Maryland Court of Appeals decision in *Moore v. Smith,* 321 Md. 347, 582 A.2d 1237 (1990), is instructive and is consistent with the result we reach. As recounted in that case, in a 1980 will, Koontz, mindful of the infirmities of his adult ward Allen, sought to provide for Allen by leaving her one-half his estate in trust for life. Thereafter, Moore, who came to be the caretaker of Koontz, exerted undue influence and caused Koontz to execute a 1984 will that left the estate to Allen in fee simple outright, if she survived him, but otherwise to Moore. The court observed that "[b]ecause Allen did survive Koontz, it would appear on the surface that Moore's undue influence did not defeat Koontz's donative intent." *Id.* at 1243. But Moore had also caused Allen to execute a will devising all of her property to Moore. The Maryland appellate court observed that Moore's objective—positioning himself to take the former Koontz estate property through Allen—"never would have occurred but for Moore's undue influence" in causing Koontz to change his will. *Id.* The court then went on to explain:

"Moore's scheme to obtain Koontz's property was only to be realized through Koontz's unconditional devise to Allen.

Thus, Moore had to make access to Koontz's property feasible. By coercing the testator to change the bequest to Allen of the life estate in trust in the 1980 will to the bequest of the entire fee simple estate in the 1984 will, Moore made this goal foreseeable. As the sole beneficiary under Allen's will, Moore would acquire everything Koontz had originally *devised to Allen....* It is clear that Moore intended for Allen to serve as the conduit through which he ultimately benefitted. Therefore, had the trial court invalidated only the clause in Koontz's 1984 will making Moore a beneficiary, and upheld the bequest to Allen, the taint of Moore's actions would have remained. *The only way to ensure that Moore did not benefit from his actions was to invalidate the entire will."*

*Id.* at 1244 (emphasis added).

In this case, by contrast, even though the hand of Amani *may be evident in the removal* of the trust for Ajolique, in the absence of a finding that omission of the trust provision resulted from Amani's undue influence, we cannot say that invalidation of the entire will is necessary to ensure that Amani does not benefit from his misdeeds.

mon (rather than joint tenants with a right of survivorship), and that "in the absence of definite language in the will giving the void legacy to the other residuary legatees, it must be held that the testator died intestate as to the void legacy. It cannot go to increase the shares of the other tenants in common." *Id.* at 774.[16]

The court's statement in *George Washington* that residuary legatees are tenants in common reflects the rule, codified in D.C.Code § 42–516(a) (2001), that "[e]very estate granted or devised to 2 or more persons in their own right ... shall be a tenancy in common, unless expressly declared to be a joint tenancy."[17] In this case, the residuary clause ("I give, devise and bequeath all of the rest, residue and remainder of my estate, of whatever kind and character, and wherever located, to the daughter of my niece, Diane Jude, that being Ajolique Jude, and to her father, Amani E.P. Guy Z. Jude.") contained no express declaration that Ajolique and Amani were to take the residuum of Turpin's estate as joint tenants, and thus we must interpret the 2007 Will as making them tenants in common as to the residuary estate, just like the residuary legatees in *George Washington.* Also as in *George Washington,* the residuary gift to one of the residuary legatees—Amani—is void; as discussed above, the legacy to Amani in

**16.** We note that the holding of *George Washington,* that a voided gift to a residuary clause beneficiary goes to the intestate heirs rather than to the other residuary beneficiaries, does not apply when the gift is made to the residuary beneficiaries as a "class" rather than to individual specific legatees. *Id.* at 773.

The *George Washington* court reasoned that the anti-lapse statute then in effect did "not address the disposition of lapsed bequests contained in the residuary clause," and applied the common law rule that "where in the residuum of a will a legacy lapsed or became void through operation of law or otherwise, in the absence of specific directions by the testator as to its disposition, the testator was held to have died intestate as to such legacy and the property was distributed to the next of kin." 88 F.2d at 772, 774. Later cases have clarified that the anti-lapse statute, D.C.Code § 18–308 (2001), applies to bequests contained in residuary clauses and thereby prevents residuary gifts from lapsing (and thus passing by intestacy) when there are surviving issue of a residuary legatee who has predeceased the testator. *See Starkey v. District of Columbia,* 377 A.2d 382, 384 (D.C.1977) ("[I]t is now settled that § 18–308 does apply to gifts in residuary clauses"); *In re Estate of Kerr,* 433 F.2d 479, 483, 491 (D.C.Cir.1970) ("The antilapse statute, as we have previously held, applies to gifts of the residuum as well as to other devises and bequests contained in the will."). However, in our jurisdiction, *George Washington* remains good law as to

the disposition of residuary bequests that are void, *see Mitchell v. Merriam,* 188 F.2d 42, 43 (D.C.Cir.1951), or that fail despite the anti-lapse statute. *See In re Estate of McFarland,* 167 S.W.3d 299, 304 & 304 n. 6 (Tenn.2005) (noting that the District of Columbia and eight states "continue to adhere to the traditional common-law or 'English' rule" that a lapsed residuary gift "falls out of the terms of the will and passes by intestate succession to the testator's heirs at law" rather than the so-called "modern" rule, incorporated in the Uniform Probate Code (which our jurisdiction has not adopted), that "if the residue is devised to two or more persons and the share of one of the residuary devisees fails for any reason, his share passes to the other residuary devisee, or to other residuary devisees in proportion to their interests in the residue."). Critics of the traditional common-law rule have observed that it "very probably defeats the testator's general testamentary intent in most cases." *In re Frolich Estate,* 112 N.H. 320, 295 A.2d 448, 451 (1972). In this case, however, application of the traditional rule prescribed by our controlling precedent leads to a result that accords with what the trial court found was Turpin's intent that Ajolique "share the estate with someone else" (but not with Amani or Aristide), and with the court's inability to find that Turpin meant to disinherit his sons.

**17.** *See also Estate of Kerr,* 433 F.2d at 483 n. 17 (discussing same rule in predecessor statute).

the residuary clause fails due to the operation of law because of Amani's undue influence. Under the holding of *George Washington,* Turpin must be deemed to have died intestate as to such legacy, and the property must be distributed to Turpin's next of kin.[18] Accordingly, we are constrained to reverse the trial court's ruling that the entire residuary estate passes to Ajolique. One-half of the residuary estate must pass by intestacy.

*Affirmed in part and reversed in part.*

18. The 2007 Will provides that in the event any portion of the will "shall be held illegal, invalid, or otherwise inoperative," "all of the other provisions ... shall continue to be fully effective and operative insofar as possible and reasonable." This provision indicates that the provisions of the will are severable, but we see no basis for Amani's assertion that, through it or through any other provision, the 2007 Will provided that "the share of the residuary legatee would be increased by the value of any invalid or inoperative bequest."