Frank A. Dobija *vs.* Estella Hopey & others.

Bristol.  January 2, 1968. — February 5, 1968.

Present: Wilkins, C.J., Spalding, Cutter, Kirk, & Reardon, JJ.

*Will,* Validity.

In a contested will case involving the simple will of a blind, elderly widow who spoke Polish, a finding by the judge that "because of the language barrier and lack of proper communications" the will did not express the intentions of the testatrix was plainly wrong on reported evidence, including testimony of a witness who had drafted the will and wit-

---

[6] See now St. 1965, c. 683, § 1, where the minimum and maximum amounts are $5,000 and $50,000.

nessed its execution that the testatrix "understood English extremely well, [and] there was no language problem," and testimony of other witnesses to the same effect and that the testatrix understood the terms of the will and it expressed her intentions; and a decree disallowing the will was reversed.

PETITION for administration of the estate of Katherine Rusinowski, late of Fairhaven, filed in the Probate Court for the county of Bristol on September 8, 1965.

PETITION for proof of the will of the decedent filed in the same court on October 7, 1965.

The petitions were heard by *Considine,* J.

*Antone L. Silva* for Frank A. Dobija.

No argument or brief for Estella Hopey.

SPALDING, J. This is an appeal from two decrees of the Probate Court disallowing an instrument purporting to be the last will of Katherine Rusinowski and appointing Estella Hopey administratrix of her estate. Frank A. Dobija, the executor named in the instrument, appealed. Except for brief findings contained in the decree disallowing the will, the judge made no findings of fact. The evidence is reported. Under familiar principles this court will not reverse the decision of the judge unless convinced that it is plainly wrong. *Culhane* v. *Foley,* 305 Mass. 542, 543.

The deceased was a widow who lived alone in her home at Fairhaven until her death on August 8, 1965, at the age of about seventy-five years. She had been blind for twelve to fourteen years. She had no children and her only heirs at law were Estella Hopey, a niece, and Matthew Sadowski and John Cygan, nephews. The whereabouts of Cygan were unknown. The instrument offered for probate was executed on July 27, 1965; it was witnessed by four persons, one of whom was Mr. Antone L. Silva, the attorney who drafted it. Under the instrument the deceased disposed of her property as follows: Her "home and all of the land adjoining" to the appellant; $1,000 to her niece, Estella Hopey; $1,500 to her grandniece Claire Grant, daughter of Estella; $5 to her nephew Matthew Sadowski; and the residue to the appellant.

Dobija *v.* Hopey.

The finding on which the judge appears to have rested his decree was, "[I]t appearing that since the drafting of the will is a sacred function and should express the complete and unmolested intentions of the drafter, and it further appearing that because of the language barrier and lack of proper communications, the Court is not convinced that said instrument possesses these qualifications."

The making of the will took place in these circumstances. Mr. Silva, who drafted the will, testified that he wrote it in the deceased's presence after having ascertained her intentions. When he finished drafting the instrument he read it to her and asked her if it was what she wanted and she replied: "[Y]es, it is, I am very happy now." Mr. Silva further testified that his client "understood English extremely well, [and] there was no language problem." All the other witnesses to the will corroborated Mr. Silva's testimony to the effect that the deceased had said that the will was what she wanted. In addition to Mr. Silva's testimony that he experienced no difficulty in communicating with the deceased, other witnesses, who were apparently disinterested, testified that the deceased spoke English well and understood the terms of the will and that the instrument expressed her intentions.

The only testimony capable of suggesting a different conclusion is that of Mildred Jachna, a former housekeeper of the deceased for a brief period, and Estella Hopey, a niece and one of the contestants.

Mildred Jachna, who was not present at the signing of the will, replied to a question as to whether the deceased understood English by saying: "She said she did some, but she spoke Polish and I spoke to her in Polish all the time."

Estella Hopey, who also was not present at the signing of the will, testified that the deceased spoke "fair" English before she went blind fourteen years prior to her death, but there were not many English speaking people around her. The niece further testified that when she said something to the deceased in English the latter would say, "[T]ell it to me in Polish because I don't quite get it."

We are of opinion that this evidence does not sustain the judge's finding that a language barrier or lack of communication renders ineffective an otherwise valid will. The will is not elaborate. It contains little more than five simple bequests. All four subscribing witnesses testified that the deceased said she was satisfied with the will. There is ample testimony that the deceased understood the provisions of the instrument and that these provisions reflected her intentions.

The making of a will, as the judge observed, is a solemn matter. But for this very reason an instrument when executed as prescribed by law is not lightly to be set aside. Of course a "person does not execute an instrument as and for his last will according to law unless he knows its contents. The burden of showing such knowledge rests upon the proponent of the will. That burden is usually sustained by the presumption that a person signing a written instrument knows its contents." *Richardson* v. *Richards,* 226 Mass. 240, 245. Here the evidence to the contrary was not sufficient to rebut the presumption. See *Epstein* v. *Boston Housing Authy.* 317 Mass. 297, 302; *Potter* v. *John Bean Div. of Food Mach. & Chem. Corp.* 344 Mass. 420, 425.

The statement in the decree that a will should express the "unmolested intentions of the drafter" suggests that the judge may have thought that there had been undue influence. An examination of the evidence reveals nothing of this nature.

The decrees are reversed; new decrees are to be entered allowing the petition for probate and disallowing the petition for administration.

*So ordered.*