BRUNILDA TORRES *vs.* FIDELITY AND GUARANTY LIFE
INSURANCE COMPANY.

No. 92-P-468.

Hampshire. March 15, 1993. - April 26, 1993.

Present: DREBEN, SMITH, & GILLERMAN, JJ.

*Insurance,* Life insurance, Misrepresentation. *Statute,* Construction.

A policy of life insurance issued without a previous medical examination
was governed by provisions of G. L. c. 175, § 124, applicable specifi-
cally to life insurance, rather than by the earlier-enacted, general provi-
sions of c. 175, § 186, with the result that the policy was not defeated
by the insured's factual misrepresentations in his application, where the
misrepresentations were not found to be wilfully false, fraudulent, or
misleading. [378-380]

CIVIL ACTION commenced in the Superior Court Depart-
ment on January 15, 1988.

The case was heard by *John F. Murphy, Jr.,* J.

*James F. Martin* for the defendant.

*Thomas P. Vincent* for the plaintiff.

DREBEN, J. This case involves the interrelationship between
§§ 124 and 186 of G. L. c. 175. More particularly, the ques-
tion before us is whether a life insurance policy, issued with-
out previous medical examination, is defeated by a misrepre-
sentation which increases the risk of loss to the insurer but is
not found to be wilfully false, fraudulent, or misleading. A
judge of the Superior Court held that the life insurance pol-
icy issued to the plaintiff's husband may not be so defeated.
We affirm.

On April 18, 1986, the plaintiff's husband, Erickson Torres
(Torres), assisted by an insurance broker, completed an ap-
plication for life insurance with the defendant, naming the
plaintiff as primary beneficiary. The broker filled out the ap-
plication by asking Torres a series of questions and filling in

or checking off his answers; thereafter Torres signed the application. A policy was issued by the defendant without a medical examination. On January 27, 1987, Torres died while the policy was in full force. Relying on G. L. c. 175, § 186, see note 2, *infra*, the defendant denied coverage, alleging that Torres had made material misrepresentations of fact in the application which resulted in an increased risk of loss to the company. The judge, while finding that Torres's failure to disclose a history of Hepatitis B symptoms and liver problems had increased the risk of loss to the insurer,[1] ruled that § 124, see note 3, *infra*, was controlling and that the insurer had failed in sustaining its burden under that statute of proving that the statements were wilfully false, fraudulent, or misleading. He thus concluded that § 124, which specifically deals with life insurance without a medical examination, is the governing statute and that § 186, which pertains to all types of policies, does not apply.

Section 186, set forth in the margin,[2] adopted in 1878, and applicable to all insurance policies, provides that a misrepresentation is not material unless it is made with actual intent to deceive or unless it increases the risk of loss. Section 124, a later provision, adopted in 1892, also set out in the margin,[3] provides that where a life insurance policy is issued

---

[1] The judge also noted that "[t]here was no evidence that the liver condition contributed to the cause of death. The defendant died suddenly in a motel room in Hadley, Massachusetts. The autopsy disclosed presence of cocaine in the body."

[2] General Laws c. 175, § 186, provides:

"No oral or written misrepresentation or warranty made in the negotiation of a policy of insurance by the insured or in his behalf shall be deemed material or defeat or avoid the policy or prevent its attaching unless such misrepresentation or warranty is made with actual intent to deceive, *or unless the matter misrepresented or made a warranty increased the risk of loss*" (emphasis supplied).

[3] General Laws c. 175, § 124, provides:

"In any claim arising under a policy issued in the commonwealth *by any life company, without previous medical examination,* or without the knowledge and consent of the insured, or, if said insured is a minor, without the consent of the parent, guardian or other person having legal custody of said minor, the statements made in the application as to the age, physical condition and family history of the insured shall be held to be valid and binding on the company; but the company shall not be debarred

without a previous medical examination, the statements in the application are binding on the insurer unless it proves such statements were wilfully false, fraudulent, or misleading.

As the judge pointed out, if § 186 also applies to life insurance policies issued without medical examination, § 124 would be virtually meaningless. Under the defendant's construction, § 124 would apply only in those limited circumstances, if any, in which the words "wilfully false, fraudulent or misleading" (§ 124) were found to have a broader scope than a "misrepresentation . . . made with actual intent to deceive." (§ 186) "Such [an ineffective] result ought not to be imputed to the Legislature in enacting a statute unless no other result can be reached reasonably." *Boston & Me. R.R. v. Hartford Fire Ins. Co.*, 252 Mass. 432, 436 (1925). "It must be presumed that the Legislature intended to accomplish something substantial by the enactment of the later statute. It must be presumed also in this connection that the Legislature was aware of [§ 186]." *Id.* at 435.

Moreover, where two provisions are in conflict,[4] if a specific provision (life insurance policy issued without medical examination) is enacted subsequent to a more general rule, the specific and not the general provision applies. 2B Singer, Sutherland Statutory Construction § 51.02, at 121 (5th ed. 1992).

Our interpretation of the statutory scheme is also confirmed by the legislative history of § 124. Under G. L. c. 175, § 17, the Commissioner of Insurance is required to report annually to the Legislature. His Thirty-third Annual Report (1888), Part 2 at vii, discussed industrial insurance,[5]

---

from providing as a defense to such claim that said statements were wilfully false, fraudulent or misleading" (emphasis supplied).

[4]The provisions may be considered conflicting because § 124 binds the insurance company to statements of physical condition in the application and only permits the insurer a single defense. Section 186, on the other hand, see note 2, *supra*, allows the insurer an additional defense.

[5]We recognize that holders of industrial insurance, a form of insurance designed to furnish a burial fund on the deaths of children and adults where small sums are paid weekly as premiums (see Twenty-seventh Annual Report [1882] at vii), may deserve more protection than other holders

then a new and growing branch of the business of life insurance, and specifically recommended that:

> "if . . . risks are taken without a medical examination, alleged misrepresentation by the applicant — who in a large number of these cases is made to understand next to nothing of the statement he is asked to sign — as to his physical condition, ought not to be permitted as a bar when a claim arises. Misrepresentation by the agent and misunderstanding by the assured now lead, under the methods thus pursued, to almost innumerable cases of hardship and injustice."

The Commissioner repeated this recommendation in his Thirty-fourth Annual Report, Part 2 at vii, in 1889, and again in his Thirty-sixth Report, Part 2, in 1891, when he wrote, at viii, that he:

> "would repeat and emphasize the suggestion, twice before made in these reports, that when any company effects insurance upon a life, without medical examination, it should be forbidden from setting up, as a bar to any claim, alleged misrepresentation by the insured as to his family history or his physical condition at the time the policy was issued . . . ."

Since § 186, see St. 1878 c. 157, § 1, see also St. 1887, c. 214, § 21, was already on the books when the Commissioner made his recommendation, it is evident that the Legislative intent, based on the Commissioner's report, in enacting § 124 was to preclude the insurer from raising any defenses not contained in § 124. See also Taylor, The Life Insurance Law of Massachusetts, 19 B.U.L. Rev. 53, 112 (1939), where the author, an associate counsel of the John Hancock Mutual Life Insurance Company, wrote:

---

of life insurance policies. Nevertheless, as enacted in 1892, § 124 was made applicable to all life insurance policies issued without medical examination.

"The later statute [§ 124] in effect carves an exception out of the earlier one [§ 186] and renders it inapplicable to cases within the ambit of the later one. Both statutes made a fraudulent statement a defence, but the later one makes no reference to an increase in the risk of loss . . . ."

Based on our analysis, we hold that the defenses of § 186 are not available to the insurer and, since it did not sustain its burden under § 124,[6] the judgment is affirmed.

*So ordered.*

---

[6]We reject as without merit the insurer's claim that Torres's statements in the application were not statements relating to physical condition. The application asked: "Within the past 10 years, has any person proposed to be insured had any known indication of or been treated for . . . any disorder or disease of the . . . liver?" The answer was "no." The judge found that Torres's medical records, among other things, indicated that his "liver function tests were significantly elevated" in 1984, that there was "evidence of hepatitis B core antibody," and that Torres "was advised on May 17, 1984 to return to recheck his hepatitis B surface antigen in one month."