Fahey, J.
The plaintiff, Ruth Robinson (“Mrs. Robinson”), filed this case against the defendant, The Prudential Insurance Company of America (“Prudential”) and Louis Pumphrey (“Pumphrey”), seeking to enforce the terms of a life insurance policy, listing her as the beneficiary. The policy was issued on behalf of *136 Mrs. Robinson’s husband, Russell P. Robinson (“Mr. Robinson”), after a meeting and subsequent application process with an underwriter and with Pumphrey, a Prudential agent, where Mr. Robinson made certain representations as to his health. Upon Mr. Robinson’s death, less than four months after the policy’s effective date, Prudential refused to pay the beneficiary of the policy, claiming that Mr. Robinson made material misrepresentations on the application. Mrs. Robinson brought suit to enforce the terms of the policy. The defendants have brought this motion for summary judgment pursuant to Mass.R.Civ.P. 56(c), claiming that because Mr. Robinson’s application contained misrepresentations, the policy is void. For the reasons stated herein, the motion is allowed.
BACKGROUND
On or about November 22, 1997, Prudential learned that Mr. and Mrs. Robinson had obtained a mortgage on their home. It then commissioned a telemarketer to contact Mr. Robinson for the purpose of soliciting the sale of a life insurance policy. After Mr. Robinson expressed interest in buying a policy during the solicitation call, the lead was turned over to Pumphrey. On or about November 27, 1997, Pumphrey, a Prudential insurance agent, met with Mr. and Mrs. Robinson at their home for the purpose of selling them an insurance policy insuring the life of Mr. Robinson for the benefit of Mrs. Robinson. At this meeting, Pumphrey explained the terms of a proposed policy for $60,000 worth of coverage, and questioned Mr. Robinson about his health and medical history. Mr. Robinson disclosed that he had been diagnosed with high blood pressure and that he had suffered a stroke ten years before and been hospitalized.
On or about December 3, 1997, Pumphrey returned to the Robinsons’ home for another meeting. There he collected the initial premium of $205.48. He informed them that Mr. Robinson would not have to submit to a medical examination in connection with the application, but would have to have his blood pressure tested and his urine sample collected for analysis. Also, on or about December 9, 1997, a nurse visited the Robinsons’ home, collected a urine sample, and took his blood pressure. On or about December 9, 1997, Mr. Robinson spoke on the telephone directly with a Prudential underwriter. During this telephone conversation, Mr. Robinson told the underwriter he had never had a disorder of the brain or blood vessels, and he had never been a patient in a hospital, and had not had surgery within the past five years. On or about December 16, 1997, Pumphrey sent Mr. Robinson confirmation that the policy was being issued in the amount of $60,000. On or about January 8, 1998, a third meeting was arranged at which Pumphrey handed Mr. Robinson a typewritten application and advised him that it had been completed in accordance with the information he provided at the first meeting.[2] According to the plaintiff, Mr. Robinson signed the application without fully reading it.
It is uncontested that the application Mr. Robinson signed was in error in four material ways: 1) He certified that he had never been a patient in a hospital or other medical facility; 2) He said he had not had surgery within the last five years; 3) He said that he had not been advised to have surgery in the last five years; and 4) He denied that he had ever had a disorder of the blood vessels or brain.
On or about April 3, 1998, Mr. Robinson died due to massive heart failure. Mrs. Robinson filed her claim for benefits under the policy shortly thereafter. On or about May 15, 1998, she received correspondence from Prudential advising her that since the death occurred within two years of the issuance of the policy, the claim for benefits was contestable. It enclosed an authorization for the release of Mr. Robinson’s medical records, which Mrs. Robinson completed and returned.
Prudential conducted an investigation of Mr. Robinson’s medical history. It discovered that Mr. Robinson had suffered a stroke on February 18, 1989 and had been rushed to the emergency room of the Cardinal Cushing General Hospital where he remained a patient until March 4, 1989. It also learned that Mr. Robinson had undergone an operation for bilateral inguinal hernias. On or about July 9, 1998, Mrs. Robinson received a declination letter from Prudential denying her claim on the ground that Mr. Robinson had misrepresented his medical background on the application.[3] It indicated that the particular policy in question would not have been issued had it known of the details of Mr. Robinson’s medical history.
Prudential now moves for summary judgment on the ground that because a medical examination was conducted when a nurse administered tests to Mr. Robinson, G.L.c. 175, §186 applies, allowing it to deny benefits due to the material misrepresentations made by Mr. Robinson on the application. Mrs. Robinson argues that Prudential’s failure to conduct a “medical examination” by a physician before issuing the policy to Mr. Robinson, precludes Prudential from contesting the validity of the representations made in the application pursuant to G.L.c. 175, §124. Plaintiff claims that no medical examination occurred because he was never examined by a physician, and because the exam by a nurse occurred after the policy issued.
DISCUSSION
Summary judgment is appropriate when no material facts are in dispute and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Highland Ins. Co. v. Aerovox, Inc., 424 Mass. 226, 232 (1997). “[A] party moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if he demonstrates, by reference to material *137 described in Mass.R.Civ.P. 56(c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case.” Kourouvacilis v. General Motors Corporation, 410 Mass. 706, 716 (1991). “Once the defendants [meet] their burden in moving for summary judgment, the burden shift[s] to the plain-tiffls] to show with admissible evidence the existence of a dispute as to material facts.” Quigley v. Bay State Graphics, Inc., 427 Mass. 455, 459 (1998) quoting Godbout v. Cousens, 396 Mass. 254, 261 (1985). Accordingly, the facts are viewed in the light most favorable to the plaintiff, the party that is opposed to the motion for summary judgment. Tetrault v. Mahoney, Hawkes & Golding, 425 Mass. 456, 459 (1997).
The first issue in this case, a novel one in Massachusetts, is what exactly constitutes a “medical examination” for the purposes of G.L.c. 175, §124. Here, the plaintiff argues that the blood pressure test and urinalysis done to Mr, Robinson by the nurse should not be considered a medical examination. Since the appellate courts of Massachusetts have never defined it, this Court is forced to look elsewhere for a definition of the term “medical examination.” The clearest definition comes from Ballentine’s Law Dictionary which describes a “medical examination” for the purposes of life insurance as: “An examination by a physician to determine the state of health of the person examined, apropos . . . his acceptability as a life insurance risk.” Given this definition, the tests conducted by the nurse in this case would clearly not constitute a “medical examination” as a true medical examination would have been conducted by a physician. This being the case, G.L.c. 175, §124[4] applies, rather than G.L.c. 175, §186.
However, just because this Court finds that G.L.c. 175, §186 is inapplicable, as the two tests done by a nurse do not constitute a “medical examination,” this does not end this Court’s review.[5] G.L.c. 175, §124 states in pertinent part that the insurance company “shall not be debarred from proving as a defense to such claim that said statements were willfully false, fraudulent or misleading.” Due to the presumption that a person signing a written instrument knows its contents, see Dobija v. Hopey, 353 Mass. 600, 603 (1968); Hull v. Attleboro Savings Bank, 33 Mass.App.Ct. 18, 24 (1992) (“One who signs a writing that is designed to serve as a [written instrument], .. . is presumed to know its contents”); Sullivan v. Manhattan Life Ins. Co. of New York, 626 F.2d 1080, 1082 (1st Cir. 1980) (citation omitted) (holding insured accountable under ordinary contract principles for signing an application without first reading it), Mr. Robinson is held to have known that he was required to be honest and forthright about his medical history on his application, including the disclosure of the fact that he had been hospitalized with a stroke in 1989, regardless of what he had previously told Pumphrey.[6]
Given this presumption, that Mr. Robinson is presumed to know the contents of his application, which clearly has some false statements and false denials, which he signed, this Court finds that the defendants have established as a matter of law that the denials/misrepresentations made by Mr. Robinson in his application were “wilfully false, fraudulent, or misleading.”[7] In opposition, the plaintiff simply states that the insurer has the heavy burden to establish at trial that Mr. Robinson’s misrepresentation was “wil-fully false, fraudulent or misleading.” However, on these facts the burden is satisfied, especially where the plaintiff concedes that the insured, in signing the application, “admittedly made a material misrepresentation to Prudential that increased the risk of loss.” See page 5 of Plaintiffs Opposition to Defendant’s Motion for Summary Judgment. As such, the statements that Mr. Robinson made on the application are not binding on Prudential. Accordingly, defendants’ motion for summary judgment is allowed.
ORDER
For the foregoing reasons, the motion of defendants Prudential and Pumphrey for summary judgment is hereby ALLOWED.[8]

Mr. Robinson answered “no” to all of the following questions on the application to which he affixed his signature: “(4) Has anyone proposed for coverage had: a) chest pain, or any disorder of the heart or blood vessels? . . . h) any disorder of the brain or nervous system? ... (6) Other than above, has anyone proposed for coverage: a) been a patient in a hospital or other medical facility? b) In the last 5 years, had or been advised to have surgery, medical tests, or diagnostic procedures (ECGs, stress tests, x-rays, blood tests, etc.)? ... (8) Does anyone proposed for coverage have any disease, disorder or condition not indicated above?” This Court relies on Prudential's assertion that the typed information was that provided by Mr. Robinson to the underwriter on December 9, 1997, because it is undisputed by the plaintiffs affivdavit.

Prudential sent a check to Mrs. Robinson refunding the premium payments paid on the policy.

G.L.c. 175, §124 states: In any claim arising under a policy issued in the commonwealth by any life company, without previous medical examination, . . . the statements made in the application as to the age, physical condition and family history of the insured shall be held to be valid and binding on the company; but the company shall not be debarred from proving as a defense to such claim that said statements were willfully false, fraudulent or misleading.

Because this Court finds that no medical examination occurred, this Court need not address the issue of whether the exam occurred before the policy issued.

The following passage appeared on the application above Mr. Robinson’s signature: “All the answers are, to the best of my knowledge and belief, complete, true and correctly recorded. It is understood that any new coverage could be invalidated if any information in the application is materially misrepresented."

An insured’s misrepresentation is material if it is made with actual intent to deceive or if it increases the risk of loss to the insurer. See Protective Life Insurance Company v. Sullivan, 425 Mass. 615, 623 (1997) citing Torres v. Fidelity Guar. Life Ins. Co., 34 Mass.App.Ct. 376, 377 (1993). While *138 these two cases generally concern G.L.c. 175, §186, the definition of “material” would apply to G.L.c. 175, §124 also.

At oral argument, plaintiffs counsel indicated that a stipulation of dismissal would be filed shortly as to defendant Pumphrey. No such stipulation has been entered on the docket as of the day of this decision and defendants’ motion is brought by both Prudential and Pumphrey.