Chernoff, J.
At issue is whether a Massachusetts statute (c. 175, §124) regulating life insurance policies written without a medical examination invalidates a condition precedent in a contract for life insurance relating to change in health status during the application review and approval process.
THE UNCONTROVERTED OPERATIVE FACTS
The decedent’s life insurance application was submitted to a broker, defendant John Steiger, in the early spring of 2000. Steiger, however, did not present the application to Sun Life until July 17, 2000. No physician’s examination was required by Sun Life when it considered the application which only involved an examination and a series of tests by a paramedic on April 20, 2000. On August 4, 2000, Sun Life approved the policy, sent it to the applicant on August 30, 2000, and it was received on September 1, 2000. On August 9, 2000, the applicant learned from his physician that he had colon cancer. Upon receiving this diagnosis, the applicant did not inform Sun Life that his health status had changed and that the statements in the application were therefore no longer accurate. The decedent died on July 14, 2001. Sun Life has declined to pay the policy amount of $1,000,000 on grounds that a condition precedent in the insurance contract was never fulfilled and hence the contract never became effective.[1] Plaintiff Sally Sacks, the widow and policy beneficiary, has brought this action against Sun Life in common-law contract, common-law negligence, and under the Consumer Protection Act, Chapter 93A. Sun Life, through a counterclaim and third-party claim against the estate, seeks rescission of the policy and a declaration that the policy was void and of no effect. Plaintiff Sacks also seeks recovery from the broker and his company, The Copley Financial Group, Inc., on grounds that his delay of three months in filing the application with Sun Life was a proximate cause of her injuries.[2]
The Life Insurance Policy Application
The Signature Section of the Application provides, inter alia:

.. .no insurance requested in the application will he effective

(a) until a policy is issued during the lifetime of the insured and
(b) until Sun Life has received the first full premium due on the policy requested and
(c) the statements made in the application are still complete and true as of the date the policy is delivered.
(Emphasis added.)
The Massachusetts Statute
G.L.c. 175, §124 provides in relevant part:
In any claim arising under a policy issued in the Commonwealth by any life company, without previous medical examination ... the statements made in the application as to the physical condition and family history of the insured shall be held to be valid, and binding on the company; but the company shall not be debarred from proving as a defense to such claim that said statements were willfully false, fraudulent or misleading.[3]
(Emphasis added.)
MEMORANDUM
The defendant Sun Life sees clause (c) in the policy application as a condition precedent and argues that the policy never came into effect because the applicant’s health had declined during the hiatus between the making of the application and the issuance of the policy. Sun Life’s position is that the condition precedent is satisfied whenever, upon receipt of the policy, an applicant (absent fraud) would have filled out the application then with the same information that was furnished in the original application. To this judge, the clause is broader and purports to say that a change in the applicant’s health between application and issuance, known or unknown to the applicant, would render the policy ineffective at *462 any time because the statements in the original application would no longer be “complete and true" at issuance.
With the Court’s reading of the clause, the company can challenge the issuance of a policy until the death of the policyholder, and beyond. For example, the policyholder could live an additional thirty years and, upon his death, the company could refuse a claim on grounds that thirty years before at issuance, the policyholder’s health was different than as stated in the application. That would indeed be a curious result in that misstatements (non-fraudulent) made in the application would be time-barred by operation of law, but misstatements (affirmative or silent) at the time of issuance would be actionable forever.
It seems to this judge that c. 175, §124 places the burden on the insurance company, where it processes a life insurance policy application without requiring a medical examination, to determine before issuance of the policy whether the application is factually accurate. The so-called condition precedent effectively circumvents the statute by making the policy voidable on the basis of subsequent supplemental information which it might not become aware of for decades. Whether clause (c) is construed narrowly as Sun Life does or more broadly as the Court reads it, there is nevertheless a confrontation with §124 and the contract provision must yield.
Sun Life relies on the case of Carroll v. Metropolitan Life Ins. Co., 258 Mass. 249 (1927). The contract there provided that there was no. insurance obligation assumed if the insured was not in “sound health” at the time of the application. The insurance was issued two weeks after the filing of the application. It turned out, that within a year prior to completing the insurance application, she had been treated for veiy serious and incurable diseases requiring three months of hospitalization and that she died 20 months after submitting the application. The policy beneficiary relied on the uncontestability language of c. 175, §124 on grounds that she had not had a real medical exam, only a cursory look by a physician who charged her twenty-five cents (25 cents). However, the jury found that there was a medical examination before the policy issued, which calls into question the applicability of §124.
In Carroll, the applicant was not in sound health and, given her diagnosis and treatment, had to have known that when she completed and submitted her application. Accordingly, the statements she made in her application, at the very least, smacked of misrepresentation. The Court ruled that the policy never issued as an obligation because she was not in sound health. Here, by contrast, there is no suggestion that the applicant either was in poor health or had reason to believe that he was in poor health at the time he completed the application.
The dictum in Carroll should not be the basis for finding that the instant policy was voidable or rescind-able forever. A condition precedent defense may be available for certain cases arising under G.L.c. 175, §186 where an insurer may avoid or prevent a policy from attaching in situations where a false representation or warranty made in negotiations was either intended to deceive or actually increased the risk of loss.[4] However, Sections 124 and 186 have been extant for well over a century with amendments hopscotching one another until 1907 with no indication that one supersedes or amends the other. Moreover, there is no suggestion that the applicant made false statements in the “negotiation of a policy of insurance.” It appears to this Court that §186 is not intended to apply to circumstances where the life insurer has elected not to require a medical examination of its applicant.
The legislative intent in enacting §124 was to preclude defenses other than those contained in that section. Torres v. Fidelity & Guaranty Life Ins. Co., 34 Mass.App.Ct. 376 (1993). Sun Life also relies on the case of Massachusetts Life Insurance Co. v. Martin C. Sullivan, 5 Mass.App.Ct. 816 (1977), where an applicant for a disability policy knew at the time of the payment of the first premium that the answers on his application for insurance were not full, complete, and truthful. The Court enforced the “no liability” language in the contract application because the applicant’s answers were not full, complete, and true to the best of his knowledge and belief. It may well be that a condition precedent defense may sometimes be available, especially where there is a scienter requirement. However, Sullivan and other cited cases do not sanction a condition precedent, in the absence of fraud, in situations where c. 175, §124 applies.
In conclusion, this Court must enforce the legislative pronouncement that public policy requires the company, where it elects not to require a medical examination, to assume additional risks absent fraud on the part of the applicant. As to the negligence claim against Sun Life, the Court finds that failure to issue the policy in accordance with internal company rules by mailing it to the applicant within three days of approval and instead waiting about three weeks does not constitute actionable negligence, especially where the policy was approved in a timely manner, where no representation was made to the applicant of an expedited issuance of the policy, and where there is no indication that six weeks from receipt of an application to the mailing of the approval is, in itself, an unreasonable period. There is also an insufficient basis in the uncontroverted facts for this Court to find that Sun Life committed an unfair or deceptive trade practice in contravention of M.G.L. Chapter 93A. This case is indeed similar to Boston Symphony Orchestra v. Commercial Union Ins. Co., 406 Mass. 7 (1989), where this judge similarly found that the questioned language in a general liability policy did not defeat the plaintiff s *463 claim that it was fully covered, but that the reading of the policy language by the insurer was reasonable, albeit, incorrect thus defeating the plaintiffs c. 93A claim.
ORDER
The plaintiffs Motion for Summary Judgment is ALLOWED in that, as a matter of contract law, the defendant is liable under the policy and accordingly must pay the policy amount of one million dollars ($1,000,000) to the plaintiff. Summary judgment is awarded against the plaintiff on the negligence and Chapter 93A claims against the defendant Sun Life.
This judge, with the assent of counsel, would be willing to report the portion of this case between the plaintiff, Sun Life, and the estate “after decision” directly to the Appeals Court for an interlocutory ruling of a case decided under Rule 5 of the Rules of Appellate Procedure. The issue may be a recurring one and the appellate resolution of the litigation between the insurer and the beneficiary may, as a practical matter, resolve the claims against the broker. If appellate consideration had to await the disposition of atrial against the broker, then years of interest at 12% per annum would ensue. A report at this juncture should serve the interest of both the plaintiff who is a mother with young children and limited means and the defendant who may be accruing an interest liability of $10,000 per month. During the pendency of the reported appeal, the discovery can proceed on the case against the broker. Counsel should inform the sessions clerk as to their position on reporting the case within thirty days following the issuance of this Memorandum and Order.

The Court notes that Sun Life’s third-party action sounds in “rescission” which suggests a position that there is a contract in need of rescinding.

The broker withheld the dating and filing of the application until his ability to sell Sun Life policies was approved by the company.

The parties agree that there was no previous medical examination nor is there an indication of willfully false, fraudulent or misleading conduct by the applicant.

Chapter 175, §186 Misrepresentations by insured; effect
No oral or written misrepresentation or warranty made in the negotiation of a policy of insurance by the insured or in his behalf shall be deemed material or defeat or avoid the policy or prevent its attaching unless such misrepresentation or warranty is made with actual intent to deceive, or unless the matter misrepresented or made a warranty increased the risk of loss.